IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY EUGENE CHAPLIN,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF MUSKOGEE;<br>MICAH FLEAK, in his individual and official capacities; and<br>WILLIAM PETERS, in his individual and official capacities,<br><br>  Defendants. | Case No. CIV-11-158-RAW |

### ORDER

Before the court are the motions for partial summary judgment by both parties [Docket Nos. 30 and 31]. The court has previously denied Plaintiff's motion; the court includes it again here only to reaffirm that there are genuine issues of material fact with regard to the issue of liability. The court also previously granted Defendants' motion as to the state claims against Officers Fleak and Peters in their individual capacities. The court revisits that issue herein and reverses its ruling; Defendants' motion is now denied as to the state claims against the Officers. The court also denies Defendants' motion as to all claims against the City. Plaintiff has filed a notice of dismissal as to the previously named "John Does 1-30." Thus, the portion of Defendants' motion requesting that the John Does be dismissed is moot.

On March 29, 2011, Plaintiff filed a Petition in the District Court of Muskogee County requesting damages based on the following claims: (1) excessive force claim pursuant to 42 U.S.C. § 1983 against the City of Muskogee (hereinafter "the City"); (2) negligence claim

pursuant to 51 OKLA. STAT. § 151 *et seq*. against the City; (3) excessive force claim pursuant to 42 U.S.C. § 1983 against Officers Fleak and Peters; (4) tort claim pursuant to 51 OKLA. STAT. § 151 *et seq*. against Officers Fleak and Peters.

In his motion for partial summary judgment, Plaintiff requests the court grant him summary judgment on the issue of liability.  In their motion for partial summary judgment, Defendants request the court grant them summary judgment and dismiss the state claims against the Officers, the federal claims against the City, including the claim for failure to train or supervise, and the state claims against the City, including the claim for improper training or supervision of the Officers.

## UNDISPUTED and DISPUTED MATERIAL FACTS

Both Officer Fleak and Officer Peters have been employed by the Muskogee Police Department (hereinafter "MPD") since 2003.  Officer Fleak was certified as a law enforcement officer by the Oklahoma Council of Law Enforcement Education and Training on May 19, 2004.  Officer Peters was certified as a law enforcement officer by the Oklahoma Council on Law Enforcement Education and Training on November 21, 2003.

In 2008, Officer Peters applied for and was selected to be a canine handler for the MPD.  In 2008, the MPD purchased a German Shepard named "Bosco" to serve as a police canine from Ameri K-9 Traning Kennels.  Bosco had already received some training prior to his purchase by the MPD.  In June and July of 2008, Officer Peters and Bosco successfully completed a 160 hour basic detector and patrol K-9 course and achieved certification.[1]

---

[1] Plaintiff argues that the training Bosco received was far below the "accepted standards."

In July of 2009, the MPD had a policy and procedure regarding the use of force, as well as a policy and procedure regarding the use of canines.[2] MPD's policy regarding the handling and deployment of canines has not been changed since 2007. In the MPD, a canine officer's duties are tracking, building searches, articles searches, evidence recovery, handler protection, crowd control, patrol work and narcotics detection. It is MPD's policy to apply the least amount of force necessary in detaining or apprehending any person. MPD has no policy requiring an officer to warn a person or suspect that a canine officer may be deployed. It is MPD policy that an officer activate the camera and audio in their vehicle to record the events of an encounter. The camera and audio are activated by the car's lights being turned on or manually on the officer's belt.

On July 23 2009, Plaintiff went to the home of his girlfriend, Catherine White, and knocked several times at her door. She refused to answer the door and called the MPD and requested assistance. The MPD received Ms. White's call at 4:10 a.m. Officers Fleak and Peters responded. On their way to Ms. White's home, the dispatcher informed the Officers that a "Larry Chaplin" in the system had several outstanding felony warrants.

When the Officers arrived at Ms. White's home, they saw a man sitting on a bench next to her front door. When they approached the man, he identified himself as "Craig Chaplin." The Officers patted him down for weapons, and he had none. Ms. White then opened her door and identified the man as "Larry Chaplin." Plaintiff then ran off the porch. Officer Fleak chased Plaintiff. After some running, Officer Fleak grabbed Plaintiff from behind and got him in a "bear hug." Meanwhile, Officer Peters ran to his car to get Bosco in case he was needed. Officer

---

[2] Plaintiff argues that the MPD's policies and procedures regarding the use of force and the use of canines are grossly inadequate.

Peters took Bosco out of the back seat of his car by the collar and took him to Ms. White's front yard. Officer Fleak was able to get Plaintiff to his knees and then face down on the ground. Plaintiff was not acting aggressively towards the Officers.

According to the Officers, Plaintiff continued to struggle and put his hands underneath him to avoid being handcuffed and ignored commands from Officer Fleak to give him his hands. According to the Officers, at this point, Officer Peters released Bosco and allowed him to bite Plaintiff, and within several seconds, Plaintiff took his hands from underneath him and allowed Officer Fleak to handcuff him. According to Plaintiff, Officer Fleak caught and handcufffed him, and then Officer Peters released Bosco and allowed him to bite Plaintiff. The parties agree that Officer Peters did not warn Plaintiff before deploying Bosco.

According to Plaintiff, while Bosco was biting him, either Officer Fleak or Peters was shouting "sic him" and "get him." Plaintiff also maintains that Officer Peters used racial epithets when he released Bosco. Bosco is originally from Holland and takes all of his commands in Dutch. Defendants argue that he would not respond to a command of "sic him" or similar phrases. Plaintiff maintains that Officers Fleak and Peters were snickering and amused as Bosco bit him; Officers Fleak and Peters maintain they were not snickering or amused.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v.

<u>Utah Transit Auth. & Local 382</u>, 462 F.3d 1253, 1258 (10th Cir. 2006).

**Plaintiff's Motion**

Plaintiff requests summary judgment on the issue of liability.  It is clear from the facts above that there are genuine disputes as to many material facts with regard to liability.  According to the Officers, Plaintiff was struggling, would not allow Officer Fleak to handcuff him, and would not listen to Officer Fleak's commands.  The Officers further argue that their actions were reasonable under the circumstances to protect Plaintiff and themselves.  The Officers maintain that they did not act inappropriately by snickering, being amused or using any inappropriate commands while Bosco assisted them in handcuffing Plaintiff.  Accordingly, the court denied this motion.

**State Claims Against Officers Fleak and Peters**

The court previously granted Defendants' motion as to the state claims against the Officers.  Defendants argued in their motion that the state claims against the Officers should be dismissed because they were acting within the scope of their employment at all times relevant to the incident.  Sections 153(A) and (B) and 163(C) of Title 51 make clear that the proper defendant to a suit under the Oklahoma Governmental Tort Claims Act is the state or political subdivision, not an employee of the state or political subdivision when that employee is acting within the scope of his employment.

An action that is within the scope of employment includes misconduct by an officer that "'though illegal, clearly was accomplished through a[n] abuse of power lawfully vested in the

officer, not an unlawful usurpation of power the officer did not rightfully possess.'" DeCorte v. Robinson, 969 P.2d 358, 362 (Okla. 1998) (citing McGhee v. Volusia County, 679 So.2d 729 (Fla. 1996)). Nevertheless, the DeCorte court found that an officer can begin acting within the scope of his employment and then, through further actions, step outside the scope of his employment. In DeCorte, the Oklahoma Supreme Court held:

> The pursuit of DeCorte, the stopping of DeCorte and approach by Robinson, the arrest, the choke hold, and the later alleged assault and battery did not happen in a single instance, but took place over a period of time. In *Nail*, we contemplated a situation in which an officer's initial actions were within the scope of employment, but that during the unfolding of events his actions may have gone beyond that scope. *Id*. at 917. Such is the case here. Robinson's initial actions may well have been taken on behalf of his employer, and been within the scope of his duties. However, the jury obviously determined that during the course of events his actions exceeded that scope. While we agree with the City's assertion that an individual cannot simultaneously act in good faith and in a malicious manner, the jury was clearly justified in finding that at some time during the episode Robinson went beyond the bounds of good faith. Thus, the jury's award of punitive damages against Robinson is not necessarily inconsistent with its judgment against the City.

DeCorte, 969 P.2d at 362.

Recognizing the ruling in DeCorte, the Tenth Circuit has found that "a finding that an officer 'at some time during the episode . . . went beyond the bounds of good faith . . . is not necessarily inconsistent with' a finding that the officer acted within the scope of his employment. Lampkin v. Little, 286 F.3d 1206, 1213 (10th Cir. 2002) (citing DeCorte v. Robinson, 969 P.2d 358, 362 (Okla. 1998)).

Plaintiff argues that the Officers unreasonably and maliciously allowed Bosco to bite Plaintiff while he was already face down on the ground and handcuffed. He argues that they shouted "sic him" and racial epithets while Bosco attacked him. The court finds there is a genuine issue of material fact as to whether the Officers actions went beyond the bounds of good

faith; thus, the motion is denied, reversing the court's prior ruling.

**Section 1983 Excessive Force & Failure to Train Claims Against the City**

Defendants argue the there is no causal nexus between the Defendant Officers' actions and any official policy or custom of the City. A municipality may not be held liable under § 1983 solely because its employees inflicted an injury on the plaintiff. Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). "'Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.'" Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).

Plaintiff has raised genuine issues of material fact as to the City's policies and customs relating to use of force and use of canines that may have caused the injury to Plaintiff. The court, therefore, denies Defendants' motion as to Plaintiff's § 1983 excessive force claim against the City.

Defendants further argue that Plaintiff has failed to provide any evidence regarding his allegations of failure to train, educate, discipline or monitor its officers and their methods regarding the use of force. The court disagrees. Plaintiff has raised genuine issues of material fact. Accordingly, Defendants' motion is denied as to Plaintiff's § 1983 failure to train claim against the City.

**State Negligence & Failure to Train Claims Against the City**

Defendants argue that Plaintiff has failed to demonstrate a *prima facie* case of negligence

against the City. Defendants also argue that Plaintiff failed to provide any evidence regarding his allegations of failure to train and supervise its officers. Again, the court does not agree. Plaintiff has raised genuine issues of material fact. Defendants' motion is denied as to the state claims against the City.

## SUMMARY

As the court has previously ruled, Plaintiff's motion for partial summary judgment [Docket No. 31] is DENIED. Defendants' motion for partial summary judgment [Docket No. 30] is MOOT as it pertains to John Does 1-30 and is DENIED as to all claims against Officers Fleak and Peters and the City.

IT IS SO ORDERED this 26th day of January, 2012.

**Dated this 26th day of January, 2012.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma